UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUSAN BUTLER,

      Plaintiff,

v.

GENERAL RV CENTER, INC and
THE PARK NATIONAL BANK,

      Defendants.

Case No. 25-12195
Honorable Laurie J. Michelson

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [8]

Susan Butler purchased a used RV from an Ohio General RV dealership. Despite the salesman's alleged promise that the RV had passed a 120-point inspection, Butler experienced major mechanical and maintenance issues with the vehicle shortly after driving it off the lot. The dealership was unable or, in Butler's telling, unwilling to repair the RV. Nor was it willing to rescind the sales contract. So Butler sued under the Ohio Consumer Sales Practices Act, bringing various fraud and warranty claims. General RV points to the parties' two-page Purchase Agreement, which disclaimed all warranties, sold the vehicle "as is," and, importantly, selected Michigan as the applicable law governing the contract. General RV now moves to dismiss, contending that these terms doom Butler's claims. The motion is fully briefed (ECF Nos. 15, 17) and does not require further argument. *See* E.D. Mich. LR 7.1(f)(2).

For the following reasons, the Court will GRANT in part and DENY in part Defendants' motion to dismiss.

## I.

Taking the well-pled allegations as true, this story starts on July 25, 2023, when Butler visited an Ohio General RV dealership and looked at a pre-owned 2014 RV called "the Dutchstar." (ECF No. 1-1, PageID.10.) There, she spoke with a salesman, Dan White, and the sales manager, Tim Nicholson, who both assured her that the vehicle's full repair and maintenance history would be provided to her. (*Id.*) They also proposed the following deal: $229,999.00 for the sale of the Dutchstar and eight tires for free. (*Id.* at PageID.11.) Back at home, Butler reviewed the then-proposed Purchase Agreement but noticed the second page was missing. She called White, who assured her that this page would be delivered to her. (*Id.*)

On August 18, 2023, Butler went back to the dealership. This time, White told her that she would have to pay General RV for four of the new tires. (*Id.*) But "because it was late, she was exhausted, and she wanted to take home the Dutchstar that day," Butler agreed to continue with the deal. (*Id.*) At that point, she still had not received the second page of the Purchase Agreement, despite White's promise to drop it off. (*Id.*) Nevertheless, Butler took comfort in White's oral promise that General RV conducted a 120-point inspection of the Dutchstar, and that if anything did not pass inspection, General RV would fix it. (*Id.*) So Butler moved forward with the purchase, signing the Purchase Agreement and a retail installment sales contract (RISC). (*Id.*

2

at PageID.12.) And General RV assigned its interest in the RISC to Park National. (*Id.*)

Yet only five days after the purchase, Butler noticed several issues with the Dutchstar, including: a bug infestation, broken washing machine, faulty city water connector, lights that would not turn off, and a refrigerator water dispenser that leaked into the freezer. (*Id.* at PageID.12.) On August 23, one week after her purchase, Butler brought the Dutchstar back to the General RV dealership, asking them to address these problems. (*Id.*) Butler believes the 120-point inspection should have discovered these issues, as should the repair and maintenance work documents from the previous owner. (*Id.*) When she asked to review those documents, General RV told her they threw out all the repair and maintenance work documents from the prior owner. (*Id.* at PageID.13.) She says General RV attempted to fix the RV twice, but the problems persisted. (*Id.* at PageID.13.) Even worse, Butler says, she began experiencing pulmonary symptoms and on September 1, discovered mold in the RV. (*Id.* at PageID.13.)

On September 16, Butler sent a written recission letter of the RISC to the operations manager of General RV. (*Id.* at PageID.14.) But General RV refused to accept it. So Butler enlisted other professionals to remedy the problems. She hired Ohio Lead and Mold to address what turned out to be aspergillus mold in the RV. (*Id.* at PageID.13.) She hired Environmental Hazards Services to clean the vehicle. (*Id.* at PageID.14.) She retained CTG Environmental to examine the ductwork and ensure the mold was remediated. (*Id.*) And she employed Master Tech RV to remedy the

remaining maintenance problems—for a total of $17,737.87. (*Id.*) Butler also sought medical care for her pulmonary symptoms, which she believes were caused by the mold exposure. (*Id.* at PageID.13.) She went to the emergency room on September 3, 2023 and was treated at the Cleveland Clinic, resulting in medical expenses totaling over $33,500. (*Id.* at Page ID.13, 15.)

Butler sums up her experiences like this: Based on General RV's alleged acts and omissions, she "signed the RISC for a vehicle she would not have bought and which was worth less than as it was portrayed, made a down payment she would not have made, paid money for repairs, incurred medical expenses, and suffered stress, pain, wasted time, inconvenience, aggravation and frustration." (*Id.* at PageID.15.)

On December 31, 2024, Butler filed suit against General RV in Ohio state court. (*Id.* at PageID.9.) She alleged violations of the Ohio Consumer Sales Practices Act ("OCSPA") and the Magnuson-Moss Warranty Act, and claims for common law negligent inspection and fraud. (*Id.* at PageID.15–20.) She also sued Park National for contractual derivative liability, and under the FTC's preservation of claims and defenses rule. (*Id.* at PageID.20–21.) On July 18, 2025, the case was transferred from state court in Ohio to this Court pursuant to the forum selection clause in the Purchase Agreement. (ECF Nos. 1, 3.)

The Court now considers Defendants' motion to dismiss. (ECF No. 8.) For the reasons that follow, the motion will be GRANTED in part and DENIED in part.

## II.

In deciding a motion to dismiss, the Court "construes the complaint in the light most favorable" to Butler and determines whether her "complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *See Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Detailed factual allegations are not required to survive a motion to dismiss, *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012), but a complaint must "raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). What is plausible is "a context-specific task" requiring this Court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III. OCSPA

### A. Choice of law

General RV seeks dismissal of Butler's Ohio Consumer Sales Practices Act ("OCSPA") claim because it believes the Michigan choice-of-law provision in the parties' Purchase Agreement precludes such a claim. The Court starts with that provision.

It states, on page one, that "[the terms of the contract] include . . . Choice of law and forum selection clauses indicating that Michigan Law applies to all potential disputes and that all claims must be filed in Michigan." (ECF No. 8-1, PageID.171 (Purchase Agreement).) The second page contains more detail: "Should any dispute arise out of anything relating to the RV purchased, including anything related to this Agreement, the RV sold pursuant to this Agreement, any financing for the purchase,

and/or any work, service or otherwise on the RV, those disputes shall be governed by the substantive laws of the state of Michigan, without regard to conflict of law rules." (*Id.* at PageID.172.)

Defendants contend that, because Michigan law governs this dispute, Butler is unable to pursue a claim under the Ohio Consumer Sales Practices Act. (ECF No. 8, PageID.155.) Butler argues that the choice-of-law provision should not be enforced because "[s]he never had the opportunity to read Page two of the Purchase Agreement or any of the other documents before signing and initialing them. (ECF No. 15, PageID.262.)

"Generally, a federal court sitting in diversity, as here, applies the choice-of-law rules of the state in which the court sits." *Walters & Mason Retail, Inc. v. Hartford Fire Ins. Co.*, No. 25-5596, 2026 U.S. App. LEXIS 2633, at *4 (6th Cir. Jan. 27, 2026) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). Under Michigan law, "[c]hoice-of-law clauses generally are enforced[.]" *Gen. Motors Corp. v. Albert Weber GMBH*, No. 08-12671, 2012 WL 2184564, at *6 (E.D. Mich. June 14, 2012). But a choice-of-law provision will not be followed if:

> (1) the chosen state has no substantial relationship to the parties or the transaction and there is no . . . reasonable basis for choosing that state's law, or

> (2) the application of the chosen state's law would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which would be the state of the applicable law in the absence of [a] choice of law by the parties.

*Gen. Med. of Louisiana, P.C. v. Singletary*, No. 340298, 2019 WL 573385, at *4 (Mich. Ct. App. Feb. 12, 2019) (citing *Chrysler Corp. v. Skyline Indus Servs., Inc.*, 528 N.W.2d 698 (1995) (quoting Restatement (Second) of Conflict of Laws § 187(2)(a), (b), p. 561)).

As for the first exception, a "'substantial relationship' exists between a party and the state in which it is domiciled, resides, or is incorporated." *In re StockX Customer Data Sec. Breach Litig.*, No. 19-12441, 2021 WL 2434169, at *2 (E.D. Mich. June 15, 2021). General RV, a Defendant in this lawsuit, is incorporated and headquartered in Michigan. (ECF No. 1, PageID.3.) So there is a reasonable basis for the parties' choice of Michigan law. *Wise v. Zwicker & Assocs., P.C.*, 780 F.3d 710, 715 (6th Cir. 2015); *In re StockX Customer Data Sec. Breach Litig.*, 2021 WL 2434169, at *2 ("Because StockX is domiciled in Michigan the Court finds that Michigan has a substantial relationship to Esquer's claims.").

The second inquiry is more complex and can be taken in three parts: (1) whether Ohio law would control in the absence of a choice-of-law provision; (2) whether enforcing the choice-of-law provision would be contrary to fundamental Ohio policy; and (3) whether Ohio has a materially greater interest than Michigan in the determination of the particular issue. *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 924 (6th Cir. 2006) (citing Restatement (Second) of Conflict of Laws § 187)).

## 1.

If the parties had not signed an agreement containing a choice-of-law provision, the governing law would be determined by the "most significant

relationship test." *Johnson v. Ventra Grp., Inc.*, 191 F.3d 732, 741 (6th Cir. 1999) (citing Restatement (Second) of Conflict of Laws § 188 (1971)). Under this test, the Court weighs five factors: "the place of contracting, the place of negotiation of the contract, the place of performance, the location of the subject matter of the contract, and the domicile, residence, nationality, place of incorporation and place of business of the parties." *Amerisure Mut. Ins. Co. v. Transatlantic Reinsurance Co.*, 573 F. Supp. 3d 1176, 1183 (E.D. Mich. 2021) (citing Restatement (Second) of Conflict of Laws § 188(2) (Am. L. Inst. 1971)).

Here, the parties are domiciled in different states: General RV (Michigan), Butler (South Carolina), and Park National Bank (Ohio).[1] (ECF No. 1, PageID.3.) But considering all other factors—place of contracting, negotiation, and performance—Ohio is the state with the most significant relationship to the case.[2] *See, e.g.*, *Johnson*, 191 F.3d at 741 (" . . . Ontario has the more significant relationship because Manutec as well as the present defendants are Ontario corporations, the contract was negotiated and signed in Ontario, and the alleged breach occurred in Ontario.").

**2.**

Next, the Court considers whether enforcing the choice-of-law provision is contrary to a fundamental policy of Ohio.

---

[1] It appears that Butler *was* living in Ohio at the time of the RV purchase but has since moved to South Carolina. (ECF No. 15, PageID.261; ECF No. 3, PageID.84.) Defendants list Butler's domicile as South Carolina (ECF No. 1, PageID.3), and Butler does not contest this characterization.

[2] The parties did not specify where the RV is currently located. So the Court does not consider the location of the subject matter of the contract as a relevant factor.

"[A] fundamental policy may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power." Restatement (Second) of Conflict of Laws § 187 (1971). "Determining whether a statute vindicates a fundamental public policy depends on the particular circumstances of each case." *Oldcastle Precast, Inc. v. Sunesis Const. Co.*, No. 07-81, 2007 WL 1655380, at *4 (E.D. Ky. June 6, 2007). For example, courts consider the features of the statute, such as anti-waiver provisions that show the legislature's intent that the statute not be displaced. *See Cottman Transmission Sys., LLC v. Kershner*, 492 F. Supp. 2d 461, 468 (E.D. Pa. 2007) (finding franchisee protection statutes in California, Wisconsin, and New York with "anti-waiver" provision "expres[s] the state's strong public policy favoring the application of the statute to protect its citizens" and thus counsel against enforcing Pennsylvania choice-of-law provision); *Banek Inc. v. Yogurt Ventures U.S.A., Inc.*, 6 F.3d 357, 360 (6th Cir. 1993) (finding Michigan franchisee protection statute without "anti-waiver" provision did not evince a fundamental state policy that could overcome the parties' choice of Georgia law).

Consumer protection laws do not necessarily represent a state's fundamental policy. *See, e.g.*, *Wright v. Freedom Mortg. Corp.*, No. 09-630, 2009 WL 10671337, at *5 (S.D. Cal. May 26, 2009) ("The Court finds that California's Unfair Business Practices law does not embody a 'fundamental' policy for choice of law purposes."); *Canon U.S.A., Inc. v. Cavin's Bus. Sols., Inc.*, 208 F. Supp. 3d 494, 505 (E.D.N.Y. 2016) ("Although the Court does not question the significance of the state deceptive

trade practices statutes to the state legislatures that adopted them, plaintiff points to no authority in North Carolina, Nevada, or Florida identifying the enforcement of the NCUDTPA, NDTPA, or FDUTPA as a 'fundamental' public policy.").

So while Butler cites pronouncements on the "broad remedial purpose" of the OCSPA, she fails to demonstrate that the OCSPA represents a fundamental policy of Ohio. (ECF No. 15, PageID.260 (citing *Detrick v. KCS Int'l Inc.*, 781 F. Supp. 3d 588, 619 (N.D. Ohio 2025).) Even if it did, however, it is not clear that enforcing the choice-of-law provision, and thus dismissing the OCSPA claim, would be contrary to that policy. "In order for the chosen state's law to violate the fundamental policy of [the other locale], it must be shown that there are significant differences between the application of the law of the two states." *S2 Yachts, Inc. v. ERH Marine Corp.*, 855 F. App'x 273, 277 (6th Cir. 2021) (quoting *Tele-Save Merch. Co. v. Consumers Distrib. Co., Ltd.*, 814 F.2d 1120, 1123 (6th Cir. 1987)). So the Court considers an analogous Michigan statute that carries out a similar policy as the OCSPA. *See Hartke v. Advent Servs, LLC*, No. 23-301, 2025 WL 2043675, at *5 n.1 (S.D. Ohio July 21, 2025) ("The Court notes once more that Florida does not have an analogous statute to R.C. § 1335.11. If Ohio's policy choices could be carried out under a similarly-designed Florida Statute, it is possible that this alternative could displace the application of Ohio's statute."); *Intermetro Indus. Corp. v. Kent*, No. 07-0075, 2007 WL 518345, at *4 (M.D. Pa. Feb. 12, 2007) ("The central question is whether application of Pennsylvania law 'would cause a substantial erosion of the quality of protection' afforded under the Texas statute.").

10

The Michigan Consumer Protection Act (MCPA), similar to the OCSPA, protects consumers from unfair and deceptive practices. *See* Mich. Comp. Laws § 445.901 *et seq*. But Michigan's statute contains an exemption for any "transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." Mich. Comp. Laws § 445.904(1)(a); *Liss v. Lewiston-Richards, Inc.*, 478 Mich. 203, 210 (Mich. 2007) (citing *Smith v. Globe Life Ins. Co.*, 460 Mich. 446, 465 (1999)). This exemption extends to sellers of new vehicles because they are otherwise regulated under the Michigan Vehicle Code. *Jimenez v. Ford Motor Credit Co.*, No. 322909, 2015 WL 9318913, at *7 (Mich. Ct. App. Dec. 22, 2015). The exemption has been extended to sellers of recreational vehicles, like General RV. *Chaudoin v. Thor Motor Coach, Inc.*, No. 15-13871, 2017 WL 3485803, at *23 (E.D. Mich. Aug. 15, 2017) ("But under Michigan Supreme Court case law on the MCPA, claims arising from Plaintiff's purchase of the RV are exempt from the statute.").

The OCSPA also contains exemptions for a few regulated entities. It excludes transactions between financial institutes and their customers, among some others, *see, e.g.*, Ohio Rev. Code § 1345.01(A). But it does not, like the MCPA, broadly exempt all regulated entities such as RV dealers. *See Dowling v. Litton Loan Servicing, LP*, No. 05-0098, 2006 WL 3498292, at *13 (S.D. Ohio Dec. 1, 2006).

Although the protection afforded to vehicle purchasers under the MCPA is narrower than the OCSPA, "a narrower consumer protection statute does not necessarily conflict with a broader consumer protection issue." *Canon U.S.A., Inc.*,

208 F. Supp. 3d at 505 ("In the Court's view, the enforcement of a choice-of-law provision that would apply a narrower consumer protection or deceptive trade practices statute does not amount to a violation of a fundamental public policy of another, more interested jurisdiction."); *see also Viking Grp., Inc. v. Wallace*, No. 25-1270, 2025 WL 4071199, at *10 (W.D. Mich. Nov. 20, 2025) (finding "[t]he simple fact that one state might have greater protections, even significantly greater protections" is not dispositive to a choice-of-law determination).

And while RV dealers like General RV may not be subject to certain consumer lawsuits alleging violations of the MCPA because they are regulated in Michigan in other ways, but they could be subject to such suits under the OCSPA, reaching different results "is not enough to demonstrate that a fundamental policy is at issue." *DaimlerChrysler Corp. Healthcare Benefits Plan*, 448 F.3d at 926–27 (citing Restatement (Second) of Conflict of Laws § 187 cmt. g ("The forum will not refrain from applying the chosen law merely because this would lead to a different result than would be obtained under the local law of the state of the otherwise applicable law.")

Thus, the Court finds that there are not significant enough differences between the two laws such that enforcing the choice-of-law provision would conflict with a fundamental policy of Ohio.

### 3.

Finally, the Court considers whether Ohio has a materially greater interest in the determination of this issue over Michigan. *DaimlerChrysler Corp. Healthcare*

*Benefits Plan*, 448 F.3d at 924. As mentioned, it appears Butler was a resident of Ohio at the time of the RV purchase. (ECF No. 3, PageID.84.) Her subsequent move to South Carolina may diminish, but does not extinguish, Ohio's interest. *See DaimlerChrysler Corp. Healthcare Benefits Plan*, 448 F.3d at 927 ("Although Ohio's interest in protecting Ann is arguably diminished somewhat by the fact that Ann is now a Tennessee resident, Ohio still has some interest in protecting an individual who entered into a marriage contract in Ohio and lived as an Ohio resident for several years thereafter."). And, as also discussed, the contract was negotiated, signed, and performed in Ohio. *See Seaman Corp. v. Flaherty*, No. 20-443, 2020 WL 5223614, at *6 (N.D. Ohio Aug. 3, 2020) (finding Ohio had a materially greater interest in the case when the contract was "contemplated and signed in Ohio" and the alleged breach occurred mostly in Ohio); *Honeycutt v. Thor Motor Coach, Inc.*, No. 22-11752, 2022 WL 17340471, at *3 (E.D. Mich. Nov. 30, 2022) (noting that Ohio had a materially greater interest in a case involving an RV sale in Ohio). So Ohio has a material interest in the case.

But is it materially greater than Michigan's interest? Michigan is General RV's state of incorporation and principal place of business. With multiple dealerships across various states, General RV "requires certainty in defending its rights in suits with its [sales] all over the country." *See Kelly Servs., Inc. v. Marzullo*, 591 F. Supp. 2d 924, 938 (E.D. Mich. 2008) (considering national company's "significantly reasonable basis" for seeking enforcement of contractual choice-of-law provision).

Michigan thus has a material interest in supporting predictability for contracting parties operating in state.

The Court, therefore, cannot find that Ohio's interest in this case is "materially greater" than Michigan's such that the choice-of-law provision should be disregarded. *Stone Surgical, LLC v. Stryker Corp.*, 858 F.3d 383, 391 (6th Cir. 2017) ("Absent such evidence that Louisiana's interest was not just greater but materially greater, there is no reason to disturb the parties' choice of Michigan law.").

Overall, the Court finds the Michigan choice-of-law provision enforceable. While Ohio is a state with a significant relationship, its interest is not materially greater than Michigan's and enforcing the choice-of-law provision would not offend a fundamental policy of Ohio. Thus, the OCSPA—an Ohio law claim—is inapplicable and must be dismissed with prejudice.

### B. Leave to amend

Defendants argue that Butler should not be permitted to amend her complaint to add an MCPA claim because such an amendment would be futile in light of the above-referenced exemption afforded to RV dealers. (ECF No. 8, PageID.155.) Butler disagrees. (ECF No. 15, PageID.267.) Butler asks the Court to hold off on making this determination. She notes that the Michigan Supreme Court recently held oral argument in a case considering the scope and applicability of the MCPA exemption and whether *Smith* and *Liss*—the cases broadly interpreting the exemption—were correctly decided. *Att'y Gen. v. Eli Lilly & Co.*, No. 165961 (Mich. Oral Argument Nov. 5, 2025). The Court agrees that this pending case will shed light on the viability of a

14

potential MCPA claim. Thus, if warranted after the Michigan Supreme Court's ruling, Butler may file a motion for leave to amend her complaint to bring a MCPA claim.

## IV. Tort Claims

### A. Choice of law

At the outset, the parties disagree whether the choice-of-law provision in the Purchase Agreement applies to tort claims. (*Compare* ECF No. 8, PageID.159–160 (applying Michigan law), *with* (ECF No. 15, PageID.272–275 (applying Ohio law).) So the Court starts there.

In determining whether a choice-of-law provision is limited solely to contractual claims, courts consider the breadth of the agreement and the relatedness of the tort claims to the contract. *Banek Inc. v. Yogurt Ventures U.S.A., Inc.*, 6 F.3d 357, 363 (6th Cir. 1993) ("[W]e find that the choice of law provision is sufficiently broad so as to cover plaintiff's claims of fraud and misrepresentation."); *Live Cryo, LLC v. CryoUSA Imp. & Sales, LLC*, No. 17-11888, 2017 WL 4098853, at *4 (E.D. Mich. Sept. 15, 2017) ("Other district courts faced with a narrowly defined choice-of-law provision like that present here, have decided that the provision does not apply to tort claims.") (collecting cases).

Here, the choice-of-law provision is quite broad. The Purchase Agreement states that "MICHIGAN LAW APPLIES TO ALL POTENTIAL DISPUTES AND THAT ALL CLAIMS MUST BE FILED IN MICHIGAN." (ECF No. 8-1, PageID.171.) The second page elaborates:

15

> Should any dispute arise out of anything relating to the RV purchased, including anything related to this Agreement, the RV sold pursuant to this Agreement, any financing for the purchase, and/or any work, service, or otherwise, on the RV, those disputes shall be governed by the substantive laws of the state of Michigan, without regard to conflict of law rules. . . . This means that if Purchaser files a claim against Dealer regarding anything with the RV, Michigan law will control that claim and it must be filed in Michigan.

(*Id.* at PageID.172.)

This provision selects Michigan law for all potential disputes about anything arising out of or related to the RV purchase, not simply to govern the agreement itself. So the Court construes it to cover both contract and tort claims. *Compare Live Cryo, LLC*, 2017 WL 4098853, at *4 (construing choice-of-law provision that "[t]his Agreement is governed by the laws of the State of Texas" narrowly as to only apply to contractual claims), *with Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1133 (6th Cir. 1991) (construing choice-of-law provision "[t]his Franchise and License Agreement and the construction thereof shall be governed by the laws of the State of Michigan" broadly as to encompass both contractual and tort claims).

And the asserted tort claims are sufficiently related to the purchase of the RV, the sale contemplated by the contract, such that Michigan law should govern. *See Banek Inc.*, 6 F.3d at 363 ("Had these claims only been tangentially related to the franchise relationship, we would be much more inclined to find the choice-of-law provision not applicable. The claims of fraud and misrepresentation that plaintiff has asserted here are directly related to the franchise agreement.")

So given the breadth of the choice-of-law clause and the relatedness of the tort claims to the subject of the contract, the Court applies Michigan law to both claims.

16

### B. Negligent inspection

To prevail on a negligence claim under Michigan law, a plaintiff must show that (1) "the defendant owed a legal duty to the plaintiff," (2) "the defendant breached or violated the legal duty," (3) "the plaintiff suffered damages," and (4) "the breach was a proximate cause of the damages suffered." *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009). Butler alleges that (1) General RV owed a duty to its customer to inspect the RV for mold and possible repairs; (2) it breached that duty by failing to do so; (3) this breach caused her illness and RV maintenance issues; and (4) resulted in damages including medical expenses and the costs to repair the RV. (ECF No. 15, PageID.273.)

General RV disagrees. It argues that the Purchase Agreement specifically disclaimed a duty to inspect the Dutchstar, and that, in signing the contract, Butler acknowledged that she "relied solely on [her own] judgment and inspection" in purchasing the RV. (ECF No. 8, PageID.160 (citing ECF No. 8-1, PageID.172).)

In response, Butler argues that despite this disclaimer, General RV undertook that duty to inspect when it "voluntarily opted to do so" and thus was required to "exercise reasonable care." (ECF No. 15, PageID.273.)

The *Hart* rule, a Michigan law principle, directs that "if the alleged tort claim would not exist absent the contract, and the harm claimed does not extend beyond the realm of the contract, no action in tort will lie." *1594052 Ontario, Inc. v. FreshOne Distribution Servs., LLC*, No. 24-11315, 2025 WL 817675, at *3 (E.D. Mich. Mar. 13, 2025) (citing *Chemico Sys., Inc. v. Spencer*, No. 22-11027, 2023 WL 1993783, at *6

17

(E.D. Mich. Feb. 14, 2023)). In determining whether this doctrine prohibits a tort claim, "courts must ask whether the plaintiff has alleged a 'violation of a legal duty separate and distinct from [a] contractual obligation.'" *Id.* (citing *Citizens Ins. Co. of Am. v. Pro. Temperature Heating & Air Conditioning, Inc.*, No. 300524, 2012 WL 5290289, at *5 (Mich. Ct. App. Oct. 25, 2012)); *Ram Int'l, Inc. v. ADT Sec. Servs., Inc.*, 555 F. App'x 493, 497 (6th Cir. 2014) ("a defendant acting pursuant to a contract is liable in tort only if he or she 'owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations.'") (internal citations omitted)). Such a "separate and distinct duty" sufficient to support a tort claim can arise "by statute, or by a number of preexisting tort principles, including duties imposed because of a special relationship between the parties, and the generally recognized common-law duty to use due care in undertakings." *Id.* (citing *Loweke v. Ann Arbor Ceiling & Partition Co.*, 809 N.W.2d 553, 560 (Mich. 2011)).

It is true that General RV disclaimed any duty to inspect in the contract. So the inquiry is whether it otherwise owed a duty to Butler to inspect the RV notwithstanding the contract. "Non-manufacturing sellers have 'no duty to inspect a product unless the seller has reason to know that it is defective or the defect is readily ascertainable.'" *Kinsey v. Sandoz Inc.*, No. 15-11752, 2015 WL 13021747, at *3 (E.D. Mich. Dec. 16, 2015); *Konstantinov v. Findlay Ford Lincoln Mercury*, No. 04-74928, 2006 WL 3299487, at *5 (E.D. Mich. Nov. 14, 2006) ("Under Michigan law, a seller is only liable for their independent negligence if they knew or had reason to know that the product was defective.") Butler does not expressly plead that White or Nicholson

18

knew of the defect. Nor does she plead that the defects were readily ascertainable. Indeed, she inspected the RV and presumably did not notice them. But given the scope and type of defects alleged by Butler, and the allegations about General RV's reluctance to send Butler the inspection report, it is certainly plausible that White and Nicholson had reason to know of them. And General RV's only response to Butler's argument about undertaking such a duty is that "Plaintiff does not provide any evidence of any agreement to conduct a 120-point inspection because General RV never made any such promise." (ECF No. 17, PageID.288.) But that is precisely what she alleged. And this is the motion to dismiss phase, not summary judgment. Discovery may well reveal that General RV had no knowledge of the defects or made no such promise about conducing a 120-point inspection, but "constru[ing] the complaint in the light most favorable" to Butler, *see Heinrich*, 668 F.3d at 403, the negligent inspection claim is plausible and may proceed.

## C. Fraudulent misrepresentation

Next, Butler claims that General RV committed fraud by telling her that the RV passed a 120-point inspection (among other assurances) when no inspection had actually occurred and contractually disclaiming any requirement to do so. (ECF No. 1-1, PageID.18.) To prove a claim of fraudulent misrepresentation, or common-law fraud, a plaintiff must establish that: "(1) the defendant made a material representation; (2) the representation was false; (3) when the representation was made, the defendant knew that it was false, or made it recklessly, without knowledge of its truth, and as a positive assertion; (4) the defendant made it with the intention

19

that the plaintiff should act upon it;  (5) the plaintiff acted in reliance upon the representation; and  (6) the plaintiff thereby suffered injury." *Roberts v. Saffell*, 280 760 N.W.2d 715, 719 (2008), *aff'd*, 483 Mich. 1089, 766 N.W.2d 288 (2009).

General RV argues that the integration clause in the Purchase Agreement—which states that the Purchase Agreement was the complete and final agreement between the parties—precludes any fraud claim. (ECF No. 8, PageID.160–161 ("By signing the Purchase Agreement, Plaintiff expressly agreed that General RV made no representations or inducements other than what is contained in the Purchase Agreement.").) Butler raises three arguments in response.

### 1.

To start, Butler says that Ohio law applies. But, as already addressed above, this claim is governed by Michigan law.

### 2.

Second, Butler believes that, because she did not receive page two of the Purchase Agreement, and that is the page that details the integration clause, "it is plausible that she cannot be contractually bound by the integration clause." (ECF No. 15, PageID.275.) This argument fails to persuade.

To begin, page one of the agreement—the page that Butler acknowledges she *did* receive—itself includes an integration clause:

> THIS PURCHASE AGREEMENT CONTAINS THE ENTIRE UNDERSTANDING BETWEEN GENERAL RV AND PURCHASER. NO ONE HAS AUTHORITY TO MAKE ANY REPRESENTATIONS BEYOND THIS AGREEMENT. NO OTHER REPRESENTATIONS OR INDUCEMENTS, VERBAL OR WRITTEN, HAVE BEEN MADE THAT ARE NOT CONTAINED ON THIS DOCUMENT. PURCHASER HAS

20

NOT RELIED ON ANYTHING NOT WRITTEN INTO THIS PURCHASE AGREEMENT. THEREFORE, NOTHING ELSE IS THE BASIS OF THE BARGAIN OR IS ENFORCEABLE AGAINST GENERAL RV, EVEN IF ALLEGED TO BE A MISREPRESENTATION. AS SUCH, A CLAIM OF FRAUD OR MISREPRESENTATION CANNOT BE GROUNDS TO RESCIND OR REVOKE THE PURCHASE OR THIS AGREEMENT.

(ECF No. 8-1, PageID.171.) So the integration clause was evident from page one alone. And there were other indicia from that page that the contract contained additional terms on a following page. (*See id.* ("PAGE 1 OF 2. SEE PAGE 2 FOR ADDITIONAL CONDITIONS."); ("BY SIGNING BELOW, PURCHASER ACKNOWLEDGES THAT PURCHASER HAS RECEIVED A COPY OF THIS AGREEMENT AND THAT PURCHASER HAS READ AND UNDERSTANDS ALL ITS TERMS, INCLUDING THOSE PRINTED ON THE NEXT PAGE.")).) Thus, Butler cannot plausibly allege that her failure to read the second page of the contract negates its integration clause. *Carrigg v. Gen. R.V. Ctr., Inc.*, 421 F. Supp. 3d 480, 490–91 (E.D. Mich. 2019) (citing *Montgomery v. Fid. & Guar. Life Ins. Co.*, 713 N.W.2d 801, 804 (Mich. App. 2005) ("It is well established that failure to read an agreement is not a valid defense to enforcement of a contract.")).

**3.**

Butler's third argument is that General RV induced her to sign the contract by "misrepresentation[s] or concealment" from its salespersons. (ECF No. 15, PageID.275.)

In terms of the elements of a fraud claim, Butler says White "represented" that "General RV did conduct a 120-point inspection of the Dutchstar . . . ." (ECF No. 1-1, PageID.11.) When she asked what would happen if the vehicle does not pass inspection, she alleges that White assured her that "everything was going to pass and if there were any problems, General RV would fix them." (*Id.*) Second, Butler has alleged that this was false. (*Id.* at PageID.12.) In support she claims that, had the 120-point inspection *actually* been conducted, the mold and maintenance issues with the Dutchstar "should have been discovered . . . ." (*Id.*) Third, Butler alleges that White knew this was false and, fourth, merely used it as a sales tactic to induce Butler to purchase the RV. (*Id.* (asserting that White "repeatedly used [the assurance of a 120- point inspection] as a selling tool since July 25, 2013, through the consummation of the consumer transaction.").) Fifth, Butler claims she did, in fact, rely on the representation, and, sixth, that this caused her injury. (*Id.* at PageID.18–19.)

Relatedly, fraudulent inducement "addresses a situation where the claim is that one party was tricked into contracting. It is based on pre-contractual conduct which is, under the law, a recognized tort." *Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760, 778 (E.D. Mich. 2014) (citing *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 532 N.W.2d 541, 544 (Mich. Ct. App. 1995)). A critical component of a fraudulent-inducement claim is "reasonable reliance" on the misrepresentation. *See Ram Int'l, Inc. v. ADT Sec. Servs., Inc.*, 555 F. App'x 493, 499 (6th Cir. 2014).

General RV argues that the integration clause in the agreement precludes any such reasonable reliance. (ECF No. 8, PageID.160 ("reliance on precontractual representations is unreasonable as a matter of law when the contract contains an integration clause, as in this case. (citing *Northern Warehousing, Inc v. State of MI Dept of Educ,* 475 Mich. 859 (Mich. 2006)).) It also points to the "no reliance" term in the Purchase Agreement stating that "PURCHASER HAS NOT RELIED ON ANYTHING NOT WRITTEN INTO THIS PURCHASE AGREEMENT." (ECF No. 17, PageID.288 (citing ECF No. 8-1, PageID.171).)

It is not so simple. "[W]here the parties to an agreement include an integration or merger clause in their written contract, 'it is conclusive and parol evidence is not admissible to show that the agreement is not integrated except in cases of fraud that invalidate the integration clause . . . .'" *LIAC, Inc. v. Founders Ins. Co.,* 222 F. App'x 488, 492 (6th Cir. 2007) (citing *UAW–GM Human Resource Center v. KSL Recreation Corp.,* 579 N.W.2d 411 (Mich. App. 1998)). Stated differently, the mere presence of a merger clause does not defeat all fraudulent-inducement claims: a "distinction must be drawn between fraud claims based on 'collateral agreements' not expressed in the contract—which a merger clause invalidates—and claims stemming from 'representations of fact made by one party to another to induce that party to enter into the contract'—which a merger clause does not invalidate." *Ram Int'l,* 555 F. App'x at 499–500 (citing *Barclae v. Zarb,* 834 N.W.2d 100, 118 (Mich. Ct. App. 2013)). In other words, while it is unreasonable to rely on prior collateral agreements, a party could reasonably rely "upon representations made by another party regarding things

23

outside the scope of the contractual terms, such as the other party's solvency, indebtedness, experience, clientele, client retention rate, business structure, etc." *See Star Ins. Co. v. United Com. Ins. Agency, Inc.*, 392 F. Supp. 2d 927, 930 (E.D. Mich. 2005).

This is precisely the distinction another court in this District relied on to deny Geneal RV's motion to dismiss a fraudulent inducement claim in a case involving nearly identical integration clauses. *Cusano v. Gen. RV Ctr.*, No. 19-10434, 2019 WL 13193928, at *6 (E.D. Mich. Aug. 22, 2019).

There, a General RV salesperson verbally assured a customer that the RV "passed" a "checklist" of requirements "with flying colors" and that the vehicle and its component parts were "brand new," all for the RV to immediately break down on the customer's first drive after signing the sales contract. 2019 WL 13193928, at *1–2. The court found that the customer adequately alleged fraudulent inducement[3] by alleging "nearly every representation material to the RV made prior to the purchase agreement was false or misleading" and that these misrepresentations "'induce[d] [him] to enter into a contract'" though the terms "were not written into the contract, itself." *Id.* (citing *LIAC, Inc.*, 222 F. App'x at 493). It distinguished such a scenario from one where a plaintiff attempts to use pre-contractual statements "in direct contradiction to what was written" such as to assert that the verbally promised price was different than the contract price. *Id.* (*contra Dolores v. Gen. R.V. Ctr., Inc.*, 398

---

[3] The court noted that a fraudulent inducement claim has identical elements to a fraudulent misrepresentation claim and analyzed both claims interchangeably. *See Cusano*, 2019 WL 13193928, at *4 n.3.

24

F. Supp. 3d 184, 186 (E.D. Mich. 2019) (denying fraudulent misrepresentation claim on summary judgment)). Thus, the court found the customer plausibly alleged fraudulent misrepresentation. *Id.* at *6. Butler alleges the same types of misrepresentations that induced her reliance. So the Court sees no reason to reach a different result.

The ruling in *Carrigg* does not alter this conclusion. In *Carrigg*, another case involving the same defendant and nearly identical integration clauses, the court dismissed the plaintiffs' fraudulent misrepresentation claim against General RV on summary judgment, explaining:

> Plaintiffs have made no express allegations and presented no evidence that would tend to show that General RV made false representations about the integration clause, such as a specific false statement to the effect that some precontract agreement or representation was actually meant to be incorporated within the written agreement when it was not, or that an agreement which was not really complete actually was—so that the incorporation clause was false.

421 F. Supp. 3d at 493. That analysis, though helpful, occurred at the summary judgment stage after the plaintiffs had completed necessary discovery but came up short. Such a determination cannot yet be made in this case before the parties have a chance to engage in discovery. While the Michigan parole evidence rule is "restrictive with respect to contracts that have a merger clause," like the court in *Cusano* noted, the resolution of this issue is better suited for summary judgment when "plaintiff must substantiate the allegations that speak to fraud with respect to 'the merger clause itself, i.e., fraud relating to the merger clause or fraud that vitiates the entire contract . . . [rather than fraud that] relates solely to an oral agreement

25

later nullified by a valid merger clause does not render the contract voidable.'" *Cusano*, 2019 WL 13193928, n.4, at *6 (citing *Newburgh/Six Mile Ltd. P'ship II v. Adlabs Films USA, Inc.*, 724 F. Supp. 2d 740, 755 (E.D. Mich. 2010)).

And other authorities raised by Defendants are distinguishable. While the court in *Chaudoin v. Thor Motor Coach, Inc.*, granted summary judgment to a defendant RV dealer on the buyer's fraudulent misrepresentation claim, it also acknowledged that "Plaintiff admitted that he had no contact with any representative from Thor prior to buying the RV." No. 15-13871, 2017 WL 3485803, at *26 (E.D. Mich. Aug. 15, 2017). For one, that case was decided on summary judgment. For another, that is not the case here. Butler has put forward several statements from White and other General RV employees, such as the assurance of a 120-point inspection, that she plausibly alleges induced her to purchase the Dutchstar.

As such, the Court finds this claim plausibly plead.

### V. Magnuson-Moss Warranty Act

Butler also claims General RV violated the Magnuson-Moss Warranty Act by selling her a service contract that disclaimed any warranties. (ECF No. 15, PageID.276 ("Defendant was precluded from disclaiming or modifying any implied warranty to Plaintiff.").)

The Magnuson-Moss Warranty Act creates a private right of action for "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d)(1). This law

"'supplement[s] state-law implied warranties only by prohibiting their disclaimer in certain circumstances'—specifically, when the seller disclaims an implied warranty while either making a written warranty to the consumer or entering into a service contract." *Carrigg*, 421 F. Supp. 3d at 492 (citing *Pidcock v. Ewing*, 371 F. Supp. 2d 870, 878–79 (E.D. Mich. 2005)). The Act defines "service contract" as "a contract in writing to perform, over a fixed period of time or for a specified duration, services relating to the maintenance or repair (or both) of a consumer product." 15 U.S.C. § 2301(8).

Again, there were no warranties made in the Purchase Agreement, so General RV did not disclaim an implied warranty while making a warranty promise in the contract. And this was a sales contract between General RV and Butler for the sale of a used RV. (ECF No. 8-1, PageID.172 ("As used in this Agreement the term "Dealer" means General RV Center, Inc. General RV becomes a party to this Agreement by its acceptance.").) So General RV did not disclaim an implied warranty in a service contract either.

Thus, Butler cannot state a claim under the Magnuson-Moss Warranty Act.

## VI. Derivative liability

Butler also seeks derivative liability against Park National Bank. (ECF No. 1-1, PageID.20 ("Park National agreed by the RISC to be subject to all claims that Ms. Butler could assert against General RV, up to the amount paid by Ms. Butler, and agreed to be subject to all defenses that Butler could assert against General RV."); *id.* at PageID.20–21 (Park National, as holder of a consumer credit contract, is

27

derivatively liable for all claims that Ms. Butler could assert against General RV, up to the amount paid by Butler, and is derivatively liable for all defenses Butler could assert against General RV, by operation of law.").)

Because it believes Butler failed to state any plausible claim, Defendants believe Butler's claims for derivative liability against Park National Bank must fail. But the Court identified two plausible claims against General RV—negligent inspection and fraudulent misrepresentation. With no other arguments made for why the derivative claims should fail, the Court sees no reason to dismiss them at this time.

## VII.

Butler states a plausible claim for relief as to her negligent inspection and fraudulent misrepresentation claims, as well as the corresponding derivative liability claims against Park National Bank. However, her OCSPA and Magnus-Moss Warranty Act claims cannot proceed. Butler may seek leave to amend her complaint, if warranted, to bring a MCPA claim after the Michigan Supreme Court rules in *Att'y Gen. v. Eli Lilly & Co.*, No. 165961 (Mich. Oral Argument Nov. 5, 2025).

IT IS SO ORDERED.

Dated: June 16, 2026

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

28